Minshau,, J.
Three questions arise upon the pleadings: 1. Should the defendant, The Standard Oil Company, be regarded as a party in its corporate capacity, to the agreement constituting the Standard Oil Trust. 2. Had the company power to become a party to such an agreement. 3. If so, is the right of the state to demand a forfeiture of its corporate franchises, or of the power to make and perform such agreements, barred by lapse of time.
1. It will be observed, on reading the answer, that while the defendant denies that it “ entered into or became a party to either or both of the agreements in said petition set forth,” and also, “denies that it has at any time or in any manner acquiesced in, or observed, performed or carried out either or both of said agreements,” it does not deny the averment of the petition, that “all of the owners and holders of its capital stock, including all the officers and directors of said company, signed said agreements. ” Nor could it have been the intention to do so, as the answer proceeds to admit, “that it,” the corporation, “is informed and believes that the individuals named in the agreement, being the same individuals who executed” it, “did enter into the agreements set forth” in the petition; claiming “that said agreements were agreements of individuals in their individual capacity and with reference to their individual property, and were not, nor were they designed to be, corporate agreements.” The claim is based upon the argument, that the corporation is a legal entity separate from its stockholders, that in it are vested all the property and powers of the company, and can only be affected by such acts and agreements as are done or exectued on its behalf by its corporate agencies acting within the legitimate scope of their powers. That its stockholders are not the corporation, that their shares are their individual property, and that they may each and all dispose of, and make such agreements affecting their shares, as best suit their private interests; and that no *177 such acts and agreements of stockholders, subservient of their private interests, can be ascribed to the company as a separate entity, tho'ugh done and concurred in by each and all of its stockholders.
The general proposition that a corporation is to be regarded as a legal entity, existing separate and apart from the natural persons composing it, is not disputed; but that the statement is a mere fiction, existing only in idea, is well understood, and not controverted by any one who pretends to accurate knowledge on the subject. It has been introduced for the convenience of the company in making contracts, in acquiring property for corporate purposes, in suing and being sued, and to preserve the limited liability of the stockholders, by distinguishing between the corporate debts and property of the company, and of the stockholders in their capacity as individuals. All fictions of law have been introduced for the purpose of convenience and to subserve the ends of justice. It is in this sense that the maxim in fictione jttris subsista aequitas, is used, and the doctrine of fictions applied. But when they are urged to an intent and purpose not within the reason and policy of the fiction they have always been disregarded by the courts. Broom’s Regal Maxims, 130. “It is a certain rule,” says Rord Mansfield, C. J., “that a fiction of law shall never be contradicted so as to defeat the end for which it was invented, but for every other purpose it may be contradicted.” Johnson v. Smith, 2 Burr., 962. “They were invented,” says BuiNKERHOFF, J., in Wood v. Ferguson, 7 Ohio St. 291, “for the advancement of justice, and will be applied for no other purpose.” And it is in this sense that they have been constantly understood and applied in this state. Hood v. Brown, 2 Ohio R., 269; Rossman v. McFarland, 9 Ohio St., 381; Collard’s Adm’r v. Donaldson, 17 Ohio R., 266.
No reason is perceived why the principles applicable to fictions in general, should not apply to' the fiction that a corporation is a personal entity, separate from the natural persons who compose it, and for whose benefit it has been invented. One author seems to think that it has outlived its usefulness, that it is “a stumbling-block in the advance of *178 corporation law towards the discrimination of the real rights of actual men and women,” and should be abandoned. Taylor on Corp. § 51. Among the many attempts that have been made to define the nature of a corporation, that given by Mr. Kyd, discarding, or at least not adopting, the .metaphysical distinction of a legal entity sepárate from the persons composing it, is certainly the most practical, presenting as it does, the real nature of a corporation as seen in its constituents, and, in the manner that it is formed and .transacts its business. His definition is, “a collection of many individuals united into one body, under a special denomination, having perpetual succession under an artificial form, and vested, by the policy of the law, with the capacity of acting, in several respects, as an individital, particularly : of talcing and granting property, of contracting obligations, and of suing and being sued, of enjoying privileges and immunities in common, and of exercising a variety of political rights, more or less extensive, according to the design .of its institution, or the powers conferred upon it, either at ;,the time of its creation, or, at any subsequent period of its "existence.” 1. Kyd on Corporations, 13. In brief then, a corporation is a collection of many individuals, united in one body under a special denomination, and vested by the policy of the law with the capacity of acting in several respects as an individual. “The statement,” says Mr. Morawetz, “that a corporation is an artificial person, or entity, apart from its members, is merely a discription, in figurative language, of a corporatation viewed as a collective body; a corporation-is really an association of persons, and no judicial dictum or legislative enactment can alter this fact.” See his work on Corporations, § 227. So that the idea that a corporation may be a separate entity, in the sense that it can act independently of the natural persons composing it, or abstain from acting, where it is their will that it shall, has no foundation in reason or authority, is contrary to the fact, and, to base an argument upon it, where the question is, as to whether a certain act was the act of the corporation, or of its stockholders, cannot be decisive of the question, and is therefore illogical; for it may as likely lead to a false, as to a true result.
*179 Now, so long as a proper use is made of the fiction, that a corporation is an entity apart from its shareholders, it is harmless, and, because convenient, should not be called in question; but where it is urged to an end subversive of its policy, or such is the issue, the fiction must be ignored, and the question determined, whether the act in question, though done by shareholders, that is to say, by the persons united in one body, was done simply as individuals and with respect to their individual interests as shareholders, or was done ostensibly as such, but, as a matter of fact, to control the corporation and affect the transaction of its business, in the same manner as if the act had been clothed with all the formalities of a corporate act. This must be so, because the stockholders having a dual capacity, and capable of acting in either, and a possible interest to conceal their character when acting in their corporate capacity, the absence of the formal evidence of the character of the act, cannot preclude judicial inquiry on the subject. If it were otherwise then, in one department of the law, fraud would enjoy an immunity awarded to it in no other.
Therefore, the real question we are now to determine is, whether it appears from the face of the pleadings, giving effect to all the denials of fact contained in the answer, that the execution of the agreement set forth in the petition, should be imputed to the association of persons constituting The Standard Oil Company of Ohio, acting in their corporate capacity.
The agreement provides in the first place that the parties to it shall be divided into three classes, the first class to embrace all the stockholders and members of certain corporations and limited partnerships, the defendant, The Standard Oil Company of Ohio, being one. It is then covenanted by the parties, that, as soon as practicable, a corporation shall be formed in each of certain states, under the laws thereof, Ohio being one, to mine for, produce, manufacture, refine and deal in petroleum and all its products; with the proviso; however, that instead of organizing a new corporation, any existing one “ may be used for the purpose when it can advantageously be done,” and in Ohio the defendant has been so used.
*180 In a subsequent part of the agreement, nine trustees are selected, their powers and duties are defined, and provision made for the selection of their successors.
As will hereafter appear, it is made the duty of the parties to the agreement, to transfer their stocks or interests in their respective companies or firms, to these trustees, who hold the same in trust, but with the power to vote on the same as though the real owners; in consideration of which, trust certificates are issued to the owners, who, as the owners of such certificates, elect the successors of the trustees.
It is then provided that all the property, assets and business of the corporations and limited partnerships embraced in the first class “shallbe transferred to and vested in the said several Standard Oil Companies.” And in order to accomplish this purpose, it is provided that “the directors and managers of each and all ot the several corporations and limited partnerships mentioned in class first, are hereby authorized and directed by the stockholders and members thereof (all of them being parties to this agreement), to sell, assign, transfer, convey and make over, for the consideration hereinafter mentioned, to the- Standard Oil Company or companies, of the proper state or states, as soon as said corporations are organized and ready to receive the same, all the property, real and personal, assets and business, of said corporations and limited parnerships.”
Now in the case of the defendant, it will be observed, that this contemplated, and could not have been accomplished, without corporate action. The Standard Oil Company of Ohio was required to transfer all its property, assets and business to a new company to be organized in the state; and this was to be accomplished by the obligation imposed on its members and stockholders, all of whom are parties to the agreement, to authorize and require the directors and managers to make the transfer. The property and assets of the corporation could only be transferred by a corporate act, and the agreement could not in this respect, be carried into effect, other than by such corporate act; and clearly indicates that the purpose of the stockholders of the defendant, in becoming a party to it, was to affect their property and business as a corporation; in other words, was to *181 .act in their corporate, and not in their individual, capacity.
The subsequent agreement of January 4, 1882, does not materially change the original agreement in this regard: Reciting that “it is not deemed expedient that all of the companies and associations should transfer their property to the said Standard Oil Companies at the present time,” and “that it is deemed advisable that a discretionary power should be vested in the trustees as to when such transfer should be made, provides that, “until said trustees should so decide, each of said companies shall remain in existence and retain its property and-business, and the trustees shall hold the stock thereof, in trust as in said agreement provided.” So that under the agreement as modified the directors and managers of the defendant may be required by its stockholders and members, all of whom are parties to the agreement, to make the transfer of the property and business of the defendant, whenever the trustees may in their discretion direct. The effectiveness of this provision to secure all intended by it, may be better understood, by observing that “the directors and managers,” “the stockholders and members” and “the trustees” here mentioned, are substantially the same persons, occupying these different relations at one and the same time.
It signifies nothing that the transfer here provided for has not, as respects the defendant, been made. It does not change the evidence it affords of the purpose and object of the members of the corporation in becoming parties to the agreement.
Again, the agreement, as performed by the members of the defendant, as effectually places the property and business of the defendant under the control and management of the Standard Oil Trust, as if the same had been transferred as provided in the original agreement. It is averred in the petition, and not denied in the answer, “ that prior to the dates of the trust agreements aforesaid, defendant’s capital stock consisted of 35,000 shares of $100.00, each, and upon the signing of said agreements in the manner aforesaid, 34,993 shares of said stock, belonging to the persons who signed the agreements in manner above set forth (in what proportions, however, plaintiff is unable to state), were transferred, by *182 defendant’s transferring officers, upon defendant’s stock books, to the certain nine trustees who were appointed and named in the first one of said trust agreements, upon the request of the respective owners of said shares and in pursuance of the provisions of said trust agreements, the remaining seven of said shares of stock being retained bjq or transferred to, the directors of defendant company; that at the time said transfer of" stock was made, there were seven directors of defendant, and each one of the seven held one share of the stock aforesaid, but the number of said directors was thereafter reduced to five, who still hold and vote said seven shares of stock and no more. That in lieu of the transfer of said 34,993 shares, as aforesaid, to the nine trustees above mentioned, an equal amount, in par value, of certificates of the Standard Oil Trust, which were provided for and described in said trust agreements, was issued and delivered by said nine trustees to the persons aforesaid, from whom said nine trustees had received said 34,993 shares of stock in defendant company; that the capital stock of said defendant company is still $3,500,000.00, and the nine trustees before mentioned still hold and control the 34,993 shares thereof which were transferred to them as above stated.”
So that all but seven of the 35,000 shares of the defendant’s capital stock has been transferred by the owners, who are parties to the agreement, to the trustees of the Standard Oil Trust; and continue to be held in trust, as appears by the supplemental agreement, the transferrers receiving in lieu thereof trust certificates equal at par value to the par value of the stock received. The control which this gives, and was intended to give, over the business of the defendant, appears from the following provision contained in the trust agreement:
“ It shall be the duty of said trustees to exercise general supervision over the affairs of' said several Standard' Oil Companies, and as far as practicable over the other companies or partnerships, any portion of whose stock is held in said trust. It shall be their duty as stockholders of said companies to elect as director's and officers thereof faithful and *183 competent men They may elect themselves to such positions when they see fit so to do, and shall endeavor to have the affairs of said companies managed and directed in the manner they may deem most conducive to the best interests of the holders of said trust certificates.”
Thus, the trustees as the legal owners of the stock, may not only elect who they please, but may elect themselves, as directors of the defendant; and not only may manage, but it is their duty to have “the affairs” of the defendant, managed and directed in the manner they may deem most conducive to the best interests of the holders of the trust certificates. In other words, it is to be managed in the interest of the Standard Oil Trust, whose principal place of business is in New York Citjq irrespective of what might be its duties to the people of this state, from which it derives its corporate life; and its real stockholders receive their dividends from the profits of that trust, and not from the earnings of their company; for the holders of the trust certificates, received in exchange for their stock transferred to the trustees, remain in law and in equitjq the real owners of the stock so transferred; and the averment in the answer that the dividends of the company are paid to the holders of its stock “appearing as such on its stock-books” is immaterial; since these persons are not the owner's, but the trustees of the stock. In fact, the averment is simply a part of the evidence, that the company, through its directors, recognizes and performs the agreement on its part. The payment of its dividends to the persons appearing as stockholders on its stock-books, is what enables the parties to the agreement to realize the primary object of the trust agreement — the accumulation of the earnings of the various companies, partnerships and individuals named in the agreement, as a common fund from which the holders of the trust certificates are to be paid dividends when declared by the trustees; and whereby many separate interests being united under one management, form a virtual monopoly through the power acquired of so controlling • the production and price of petroleum and its products, as to destroj^ Competition.
*184 Applying then the principle that a corporation is simply an association of natural persons, united in one body under a special denomination, and vested by the policy of the law with the capacity of acting in several respects as an individual, and disregarding the mere fiction of a separate legal entity, since to-.regard it in an inquiry like the one before us would be subversive of the purpose for which it was-invented, is there, upon an ' analysis ' of the agreement, room for doubt, that the act of all the stockholders, officers- and directors of the company in signing it, should be imputed to them as an act done in their capacity as a corporation? We think not, -since thereby all the property and business of the company is, and was intended to be, virtually transferred to the Standard Oil Trust, and is controlled, through its-trustées, as effectually as if a formal transfer had been made by the directors of the company. On a question of this kind, the fact must constantly be kept in view, that the metaphysical entitjr has no thought or will of its own; that every act ascribed to it, emanates from and is the act of the individuals personated by it; and that it can no more do an act, or refrain from doing it, contrary to the will of these natural persons, than a house could be said to act independently of the will of its owner; and, where an act is ascribed to it, it must be understood to be the act of the persons-associated as a corporation, and whether done in their capacity as corporators or as individuals, must be determined by the nature and tendency of the act.
It therefore follows, as we think, from- the discussion we have given the subject, that where all, or a majority, of the stockholders comprising a corporation, do an act which is designed to affect the property and business of the company, and which, through the control their numbers give them over the selection and conduct of the corporate agencies, does affect the property and business of the company, in the same manner as if it had been a formal resolution of its board of directors; and the act so done is ultra vires of the corporation and against public policy, and was done by them in their individual capacity for the purpose of concealing their real purpose and object, the act should be regarded as *185 the act of the corporation; and, to prevent the abuse of corporate power, may’' be challenged as such by the state in a proceeding in quo warranto.
2. That the nature of the agreement is such as to preclude the. defendant from becoming a party to it, is, we think, too clear to require much consideration by us. In the first place, whether the agreement should be regarded as amounting to a partnership between the several companies, limited partnerships and individuals, who are parties to it, it is clear that its observance must subject the defendant to a control inconsistent with its character as a corporation. Under the agreement all but seven of the shares of the capital stock of the company have been transferred by the real owners to the trustees of the trust, who hold them in trust for duch owners; and being enjoined by the terms of the agreement to endeavor to have “the affairs” of the several companies managed in a manner most conducive to the interest of the holders of the trust certificates issued by the trust, have the right, in virtue of their apparent legal ownership and by the terms of the agreement, to select such directors of the company as they maj see fit, nay more, may in fact select themselves. The law requires that a corporation should be controlled and managed by its directors in the interest of its-own stockholders, and conformable to the purpose for which it was created by the laws of its state. By this agreement, indirectly it is true, but none' the less effectually, the defendant is controlled and managed by the Standard Oil Trust, an association with its principal place of business in New York City, and organized for a purpose contrary to the policy of our laws. Its object was to establish a virtual monopoly of the business of producing petroleum, and of manufacturing, refining and dealing in it and all its products, throughout the entire country, and by which it might not merely control the production, but the price at its pleasure. All such associations are contrary to the policy of our state and void. Salt Co. v. Guthrie, 35 Ohio St. 666; Emery v. Ohio Candle Co, 47 id. 320. “The word ‘trust,’” says Mr. Cook, “was first used to mean an agreement, between many stockholders in many corpora *186 tions, to place all their stock in the hands of trustees and to receive therefor trust certificates from the trustees. The stockholders thereby consolidated their interests and became trust certificate holders. The trustees own the stock, vote it, elect the officers of the various corporations, control the business, receive all the dividends on the stock and use all these dividends to pay dividends on the trust certificates. The trustees are periodically elected by the trust certificate holders. The purpose of the “trust” is to control prices, prevent competition and cheapen the cost of production. The Standard Oil Trust, the American Cotton Seed Oil Trust and the Sugar Trust are examples of this method of combination.” Cook on Stock and Stockholders, § 503a. See also, Wait on Insolvent Corporations, § 478.
Much has been said in favor of the objects of the Standard Oil Trust, and what it has accomplished. It may be true that it has improved the quality and cheapened the costs of petroleum and its products to the consumer. But such is not one of the usual or general results of a monopoly; and it is the policy of the law to regard, not what may, but what usually happens. Experience shows that it is not wise to trust human cupidity where it has the opportunity to aggrandize itself at the expense of others. The claim of having cheapened the price to the consumer, is the usual pretext on which monpolies of this kind are defended; and is well answered in Richardson v. Buhl, 77 Mich. 632. After commenting on the tendency of the combination, known as the Diamond Match Company, to prevent fair competition and to control prices, Champwn, J., said, “It is no answer to say that this monopoly has in fact reduced the price of friction matches. That policy may have been necessary to crush competition. The fact exists that it rests in the discretion of this company at any time to raise the price to an exorbitant degree.”
Monpolies have always been regarded as contrary to the spirit and policy of the common law. The objections are stated in “The case on Monopolies,” Darcy v. Allein, Coke’s Reports, part XI, 84b. They are these: 1. “That the price of the same commodity will be raised, for he who has the *187 sole selling of any commodity, may well make the price as' he pleases.” 2. “The incident to a monopoly is, that after the monopoly is granted, the commodity is not so good and merchantable as it was before; for the patentee having the sole trade, regards only his private benefit, and not the commonwealth. 3. “It tends to the impoverishment of divers artificers and others, who before, by the labor of their hands in their art or trade, had mantained themselves and their families, who will now of necessity be constrained to live in idleness and beggary.” The third objection, though frequently overlooked, is none the less important. A society in which a few men are the employers and the great body are merely employes or servants, is not the most desirable in a republic; and it should be as much the policy of the laws to multiply the numbers engaged in independent pursuits or in the profits of production, as to cheapen the price to the consumer. Such policy would tend to an equality of fortunes among its citizens, thought to be so desirable in a republic, and lessen the amount of pauperism and crime. It is true that in the case just cited, the monopoly had been created by letters patent. But the objections lie not to the manner in which the monopoly is created. The effect on industrial liberty and the price of commodities will be the same whether created by patent, or by an extensive combination among those engaged in similar industries, controlled by one management. By the invariable laws of human nature, competition will be excluded and prices controlled in the interest of those connected with the combination or trust.
3. The defendant relies upon a provision in section 6789, Revised Statues, as a bar to the action. That provision is as follows:
“Nothing in this chapter contained shall authorize an action against a corporation for forfeiture of charter, unless the same be commenced within five years after the act complained of was done or committed.”
It is contended, however, by counsel for the plaintiff, that this section does not apply to a proceeding instituted on behalf of the state by the attorney general to forfeit the *188 charter of a corporation; that it was only intended to apply to like proceedings by prosecuting attorneys. The argument, is based upon what is claimed to have been the law prior to. the revision, and that there could have been no intention to change it in this regard by the above provision. We cannot adopt this conclusion. It is contained in the very chapter under which the proceeding was commenced by the attorney general. It contains no exception, and we are not warranted in making one against the plain language of the-statute.
It is further contended that the provision does not apply by reason of the fact, as averred in the petition, “that the-plaintiff had no knowledge of the existence of either of the aforesaid agreements, ' or of the acts hereinbefore recited,, until the latter part of the year 1889.” The general rule is that a party’s want of knowledge does not prevent the running of the statute of limitations against an action that lias, accrued in his favor; and the only exception is concealment or fraud on the part of the defendant, which is expressly confined by our statute to “an action for relief on the ground of fraud.” § 4982 Revised Statutes. This is not such an action; and fraud in fact is not averred, it is simply want of knowledge on the part of the plaintiff.
But the whole of § 6789, Revised Statutes, is not quoted by the defendant; it further proceeds: “Nor shall an action be brought against a corporation for the exercise of a power or franchise under its charter which it has used and exercised for a term of twenty years.” Therefore within that time such a proceeding may be brought. The defendant, as we have shown, in making and entering into the trust agreements, exercised a power for which it had no authority under the laws of this state, and is continuing to perform the agreement on its part. In addition to a prayer for the forfeiture of the defendant’s right to be a corporation, the state prays for such other relief as to the court may seem just and proper; and, in the opinion of the court, the defendant should be ousted from the power to make and perform the agreement set forth in the petition, or any part, of it.
*189 And in this connection, it is proper to say, that, in the judgment of the court, if the company through its directors, or otherwise, should hereafter recognize the transfers of the shares that have been made on its ’ stock-books to the trustees provided for in the trust agreement, or should hereafter make such transfers; or should pay dividends to them instead of to the real owners of the shares; or should permit such trustees to vote on shares so held by them in the election of its directors, in ever}*- such case, it must be regarded and held, as performing the agreement in violation of the judgment of this court.

Judgment ousting the defendant from the right to make the agreement set forth in the petition and of the power to perform the same.